FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ SEP 30 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ROSEANN PAOLERCIO,

              Plaintiff,

-against-

ALLSTATE INSURANCE CO.,

              Defendant.

------------------------------------------------------------X

MEMORANDUM & ORDER
09-CV-983 (NGG) (JO)

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Roseann Paolercio ("Paolercio") alleges that Defendant Allstate Insurance Co. ("Allstate"), her former employer, discriminated against her on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. (Compl. (Docket Entry # 1).) Paolercio brings claims for disparate impact and disparate treatment, alleging that she was unlawfully terminated as a result of Defendant's discrimination. (Id.) Defendant Allstate has moved for summary judgment on all claims under Federal Rule of Civil Procedure 56. (Def. SJ Mot. (Docket Entry # 27).) For the reasons set forth below, Defendant's motion is granted in its entirety.

## I. BACKGROUND

### A. Plaintiff's Rule 56.1 Statement

      With its Motion for Summary Judgment, Defendant filed a Statement of Material Facts, as required by Local Rule 56.1.[1] (Docket Entry # 27-3.) Plaintiff also filed a document entitled

---

[1] Local Rule 56.1 provides as follows:

> (a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

1

"Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment." (Pl. R. 56 Statement (Docket Entry # 31-1).) Plaintiff's submission, however, fails to comply with Local Rule 56.1. In most instances, where Plaintiff disputes a fact asserted by Allstate, Plaintiff writes only "Disputed" without any further explanation, and—contrary to Local Rule 56.1(d)—Plaintiff does not include citations to admissible evidence in the record. See Local R. 56.1(d) ("[E]ach statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)).

"Generally, the plaintiffs' failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (internal quotations omitted); see also Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000). The court "endeavors, however, to avoid penalizing parties harshly as a result of technical errors by their attorneys, and will deem the facts set forth in plaintiff's memorandum of law sufficient to satisfy Rule 56.1 to the extent that the rule is otherwise complied with. However, where a stated fact is nowhere controverted, it will be deemed admitted." Jessamy, 292 F. Supp. 2d at 504-05. Here, however, neither Paolercio's

---

(b) The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

(c) Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.

(d) Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).

2

brief in opposition to Defendant's motion nor the portion of her Rule 56.1 statement in which she attempts to dispute Defendant's assertions contains any citation to facts in the record. (See Pl. R. 56 Statement; Pl. Opp. (Docket Entry # 31).)[2] Because these documents, absent citation, are of minimal usefulness, the court must look to Defendant's Rule 56.1 Statement for an account of the underlying facts to the extent that this statement is supported by admissible evidence in the record. See Jessamy, 292 F. Supp. 2d at 505 (finding that the court was "left with no choice but to treat as admitted all statements of fact contained in defendants' Rule 56.1 Statement that are supported and verified by admissible evidence contained in the record," where plaintiff failed to include citations); Shepard v. Frontier Comms. Servs., Inc., 92 F. Supp. 2d 279, 284 (S.D.N.Y. 2000) ("[P]laintiff's Rule 56.1 statement includes several statements of disputed facts that are not supported by a citation to the record . . . . Although not grounds for deeming all of the material facts set forth by defendants' Rule 56.1 statement as true, this Court will not consider any statements made by plaintiff in her Rule 56.1 statement that are not supported by a citation to the record.").

### B. Facts

Paolercio began working for Allstate in 1983. (Paolercio Deposition Transcript ("Pl. Dep."), Ex. A to Halpern Decl. (Docket Entry # 27-5) 9:2-4.) Prior to 2002, Paolercio worked in the Staten Island Claims Office; and, from 2002 until her termination, Paolercio worked in the Sheepshead Bay Claims Office. (Id. 21:9-13.) From 1984 to 1998, Plaintiff worked as a claims representative and adjuster in units that handle the review and payment of "no fault" insurance claims. (Id. 10:12-11:23; see also Valente Decl. ¶ 4.) In 1998, Plaintiff transferred to a "bodily injury claims" unit, where she worked until 2006. (Pl. Dep. 11:22-23, 13:7-15.) In 2006,

---

[2] Plaintiff includes no citations where she attempts to dispute Defendant's asserted facts. (See Pl. R. 56 Statement at 1-3.) In her separately numbered statement of facts that follows, however, Paolercio does cite to her own deposition testimony. (Id. at 4-5.) The court considers the cited statements to the extent that they are admissible.

3

Allstate transferred Plaintiff back to a no fault unit, where she remained until her employment was terminated in 2008. (Id. 11:24-12:5.)

Prior to 2004, Paolercio performed her job satisfactorily. She received several promotions. (Pl. Dep. 11:2-3.) And, as her annual performance evaluations indicated, her supervisors consistently rated her highly. Allstate used a five-point scale to describe employees' overall performance: Employees could earn ratings of Exceeds, Meets, Successful, Fair, or Unacceptable. (See Ex. F to Halpern Decl. at AL00051.) From 1983 to 2004, all of Paolercio's ratings fell in the two highest categories, Meets and Exceeds. (Ex. D to Halpern Decl. at ALL00009-10.)

In 2004, however, Paolercio's performance began to decline. Paolercio was rated "Fair" in her mid-year evaluation, which noted that she needed to work on the timely completion of new file assignments and on increasing her rate of file disposition. (Pl. Dep. 71:20-72:21; Ex. E to Halpern Decl. at ALL00060-61.) In 2005, Paolercio's evaluations again noted her need to improve file disposition (Ex. F to Halpern Decl. at AL00054 (mid-year evaluation)) and her need to improve timely work on her new files (Pl. Dep. 70:7-20 (year-end evaluation)). In 2004, 2005 and 2006, Plaintiff received year-end ratings of Successful. (Ex. E to Halpern Decl. at ALL00060-61.)

Allstate no fault adjusters receive five to ten files per day, and they are required to review each new file within 24 hours. (Pl. Dep. 78:6-19; Ex. D to Halpern Decl. at ALL00012.) In June of 2007, Paolercio's supervisor, Madeline Valente, discovered that Paolercio had 64 unreviewed new file assignments in her desk. (Valente Decl. ¶ 10; Ex. D to Halpern Decl. at ALL00013; Pl. Dep. 84:3-7.) Valente warned Paolercio about her performance, and made several changes in

4

order to enable Paolercio to catch up on her overdue assignments.[3] (Valente Decl. ¶ 11; Pl. Dep. 84:8-85:3, 90:19-25.) But, by December of 2007, Paolercio's performance had declined further; at that time, she had 87 unreviewed files and 359 bills over 26 days old. (Pl. Dep. 92:6-20; Valente Decl. ¶ 15; Ex. D to Halpern Decl. at ALL00013.) Paolercio received ratings of Fair on both her mid-year and year-end performance evaluations in 2007. (Ex. H to Halpern Decl. at ALL0037; Pl. Dep. 31:23-32:15.) These ratings were based on Paolercio's failure to meet minimum Allstate requirements, as well as certain New York state regulatory standards. (Ex. H to Halpern Decl. at ALL0038; Pl. Dep. 35:7-41:8.)

Shortly after her 2007 year-end review, Plaintiff received an Unacceptable Performance Notification ("UPN"), which notified her that she needed to improve her performance and meet enumerated statistical benchmarks within a 90-day period—between March 11 and June 11, 2008—in order to avoid termination. (Pl. Dep. 61:2-20; Ex. H to Halpern Decl. at ALL00041; Valente Decl. ¶ 21.) Paolercio did not achieve the UPN goals. She did not resolve her pending unreviewed files (Pl. Dep. 106:25-108:4, 130:11-131:18), and she fell further behind on payments/denials within 30 days, proper denials, timely interest, and interest paid. (Id. 108:5-109:11, 125:21-127:2; Ex. D to Halpern Decl. at ALL00015.) Paolercio also failed to utilize remedial measures imposed by the UPN, including online learning courses and weekly sit-alongs with her supervisor. (Valente Decl. ¶ 23 (noting that Paolercio failed two of three online learning courses, and did not complete the third); Pl. Dep. 102:13-104:14, 134:5-11.)

Consequently, Plaintiff was informed that her termination was being recommended. (Pl. Dep. 134:12-14.) On August 6, 2008, a written Termination Request was submitted, which detailed the reasons for Paolercio's termination. (See Ex. D to Halpern Decl.) This document included Plaintiff's employment history with Allstate, a copy of her UPN, a chronology of events

---

[3] Among other things, Valente temporarily stopped assigning Paolercio new files.

leading up to the UPN, and a comparison of Paolercio's performance with that of her co-workers. (Id.) Of the five no fault adjusters in her unit, Paolercio had the most experience. (Valente Decl. ¶ 8.) The statistics in the Termination Request, however, showed that her performance fell below that of other no fault adjusters in her unit in a number of areas. (See Ex. D to Halpern Decl. at ALL00021 (statistical comparison of Plaintiff's performance versus peers' performance).) Notably, as of June 2008, Paolercio had 1366 bills over 26 days old, whereas each of her co-workers had between 26 and 345 such bills. (Id.) Paolercio was handling significantly fewer claims than other employees in her unit. (See id. (showing that Paolercio had 241 pending coverages, whereas each of her co-workers had between 692 and 841).)

Ultimately, Allstate terminated Paolercio on August 28, 2008. (Valente Decl. ¶ 31.) Paolercio's work was divided among the remaining no fault adjusters in her unit, and no new employee was hired to replace her. (Id.) At the time of Paolercio's termination, she was 52 years old.

### C. Paolercio's Allegations of Discrimination

Paolercio alleges that Allstate discriminated against her on the basis of age. She brings claims for disparate treatment and disparate impact under the ADEA, 29 U.S.C. §§ 621-634. (Compl.)

#### 1. Disparate Treatment

Paolercio concedes that she "does not have documentation or smoking gun evidence" to support her claim of discrimination. (Pl. Opp. at 4.) Rather, Paolercio's disparate treatment claim hinges on her allegation that she was held to a higher standard than other employees. Paolercio argues that "she was given more work than others and therefore this overload caused her to fall behind." (Id. at 7.) Although Paolercio acknowledges that she "fell short" of the

benchmarks set in her UPN, she argues that at least some of these shortfalls were minor. (Id. (stating that she *almost* performed up to standard in two UPN categories).) Paolercio points to categories in which her performance was admittedly sub-par but, in her estimation, not so far "below standard [as to] warrant[] termination" and argues that "[t]hese examples show a scrutiny unmatched by any other employee." (Id.)

### 2. Disparate Impact

Paolercio argues that Allstate engaged in a pattern of discrimination against older employees, which amounted to disparate impact. (See id. at 7-8.) In her deposition testimony, she provided names of several other older employees who were terminated or stepped down. She claimed that three older employees, in other Allstate offices, were terminated the same week as she was. (Id.; Pl. Dep. 205:25-206:9.) Paolercio did not provide any testimony or additional evidence about these other employees, their job performances, or the circumstances surrounding their terminations.

## II. LEGAL STANDARD

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. A grant of summary judgment is proper "when no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

### III. DISCUSSION

#### A. Disparate Treatment

The ADEA prohibits employers from taking adverse action against an employee because of the employee's age. 29 U.S.C. § 623(a). In the Second Circuit, ADEA claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (extending McDonnell Douglas burden-shifting analysis to the ADEA); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (affirming the continued applicability of the McDonnell Douglas framework after the Supreme Court's decision in Gross v. FBL Financial Services, Inc., 129 S.Ct. 2243 (2009)).

Within this framework, a plaintiff must first establish a prima facie case of discrimination. Gorzynski, 596 F.3d at 106. To do so, the plaintiff must demonstrate that: (1)

she belonged to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. Id. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory rationale for its actions. Id. If the defendant offers a neutral explanation for its actions, the burden shifts back to the plaintiff, who can no longer defeat summary judgment by relying only on the prima facie case. Id.

The Supreme Court's recent decision in Gross v. FBL Financial Services changes the third step of this formulation. Gorzynski, 596 F.3d at 106; Gross, 29 S.Ct. at 2349-51. Prior to Gross, courts borrowed the mixed motive formulation from Title VII, and a plaintiff could carry her burden of proof under the ADEA by showing that age was *one* of the factors that motivated the adverse employment action. See Gorzynski, 596 F.3d at 106. After Gross, however, such a showing is insufficient. In order to carry her burden of proof in the last McDonnell Douglas step and survive summary judgment, plaintiff must now have sufficient evidence to convince a reasonable jury that age was "the 'but-for' cause" of her termination. Id.; Gross, 29 S.Ct. at 2343, 2352.

1. Prima Facie Case

In order to establish a prima facie case of age discrimination, Paolercio must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination. Gorzynski, 596 F.3d at 107. Here, Defendants do not dispute that Paolercio was within the protected class, or that her termination constituted adverse employment action. (See Def. SJ Mot. at 15.)

9

As to the second prong, that she was qualified for the position, Paolercio has failed to meet her burden. In order to show that she was "qualified," Paolercio must show that her job performance was satisfactory "at the time of [her] discharge." Thornley v. Penton Publishing, 104 F.3d 26, 29 (2d Cir. 1997). Although it is clear from the record that Paolercio's job performance was satisfactory at earlier points in her employment, her performance declined sharply in the years leading up to her termination. This latter part of Paolercio's employment is the relevant timeframe for assessing her job performance, and Paolercio concedes that her performance fell below Allstate's standards during this time. Paolercio's contention that the court should consider whether her substandard performance was *so substandard* as to warrant termination is unavailing. "Whether job performance was satisfactory depends on the employer's criteria for the performance of the job—not the standards that may seem reasonable to the jury or judge." Thornley, 104 F.3d at 29. Because Paolercio acknowledges that she did not meet her employer's job performance criteria at the time of her discharge, it is not the court's place to inquire into the reasonableness of this criteria.[4]

Paolercio has also failed to establish the fourth prong, that the adverse employment action against her occurred under circumstances giving rise to an inference of discrimination. Paolercio concedes that no one at Allstate made negative age-based remarks to her (Pl. Dep. 26:11-28:5), and that she has no "documentation" of discriminatory actions or any of what she calls "smoking gun evidence" (Pl. Opp. at 4). Paolercio's argument that she was held to a different standard that other employees is wholly conclusory and unsupported by the record. Gorzynski, 596 F.3d at 101 ("[A] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment, and show more than some metaphysical doubt as to the material facts.") (internal

---

[4] Although in-depth analysis of Allstate's criteria for evaluating the performance of no fault adjusters would be inappropriate here, the court notes that, on its face, neither Allstate's stated policies or its evaluation of Paolercio's performance appear unreasonable.

quotations and citations omitted). Here, the only "facts" to which Paolercio points are her subjective feelings that she faced discrimination. (See Pl. R. 56.1 Statement at 4-5.) Citing to her deposition testimony, Paolercio states, inter alia, that she "felt discriminated against before her termination," she "felt targeted before her termination," she "felt targeted from as early as March 2006," and she "felt that Allstate held her to a different standard." (Id.) Although supported by Paolercio's testimony, these feelings of discrimination do not amount to evidence that the court can credit. See Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999) (Plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination") (punctuation omitted); Martin v. MTA Bridges & Tunnels, 610 F.Supp.2d 238, 251 (S.D.N.Y. 2009) (plaintiff's "belief" that an action was motivated by discrimination is not sufficient to raise a genuine issue of fact).

Although a plaintiff's burden in making a prima facie case is "not a heavy one," Gorzynski, 596 F.3d at 107, Paolercio has not satisfied even this meager burden with regard to the second and fourth elements.

### 2. Plaintiff's Burden of Establishing Pretext

Even if the court were to assume arguendo that Paolercio made a prima facie case, because Defendant has proffered a neutral justification for Plaintiff's termination—that Paolercio failed to meet the Allstate's requirements and regulatory standards—the burden would shift back to the Paolercio "to prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross, 129 S.Ct. at 2351. Even viewing the evidence in the light most favorable to Paolercio, she has made no showing that age was *a* factor in her termination, let alone that it was the but-for cause. Furthermore, Paolercio has wholly failed to meet her burden of showing that there is a material

11

issue of fact as to whether "the employer's asserted reason for discharge is false or unworthy of belief." See Schnabel v. Abramson, 232 F.3d 83, 88-89 (2d Cir. 2000). On this record, no rational jury could find that Paolercio has carried her burden.

## B. Disparate Impact[5]

To establish a prima facie case of disparate treatment under the ADEA, a plaintiff must "first identify a specific employment practice having an adverse impact upon members of the protected class, and then show causation, i.e., that the practice excluded him or her, as a member of a protected group, from a job or promotion opportunity." Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 115 (2d Cir.1992) (internal quotation marks and citations omitted). A plaintiff can make such a showing by "showing either a gross statistical disparity, or a statistically significant adverse impact coupled with other evidence of discrimination." Waisome v. Port Auth. of N.Y. & N.J., 948 F.2d 1370, 1375 (2d Cir.1991).[6] Moreover, a disparate impact claim "must allege a disparate impact on the entire protected group, i.e., workers aged 40 and over." Criley v. Delta Air Lines, Inc., 119 F.3d 102, 105 (2d Cir.1997).

Here, Paolercio has provided no statistical evidence of discrimination. The only evidence she provides that purports to relate to her disparate impact claim is her deposition testimony that several older employees in other Allstate departments stepped down or were terminated. Even accepting these allegations as true, the court is unable to draw any conclusion as to the statistical

---

[5] Although Paolercio's complaint alleges both disparate treatment and disparate impact claims (Compl.), neither party makes any argument regarding her disparate impact claim in their submissions regarding summary judgment (see Def. SJ Mot; Pl. Opp.; Def. Reply (Docket Entry # 32)).

[6] If a plaintiff makes a prima facie case of disparate impact, the parties move forward in the burden-shifting framework for analyzing this type of claim: "An employer may then show that the challenged practice had a legitimate purpose. If the employer meets this burden, the plaintiff must prove that the proffered purpose is pretextual." Dist. Council 37, Am. Federation of State, Cnty. & Municipal Emps., AFL-CIO v. N.Y.C. Dep't of Parks & Recreation, 113 F.3d 347, 352 (2d Cir.1997) (internal citations omitted). Here, however, Paolercio has clearly failed to make a prima facie case of discrimination, and consideration of these additional steps is unnecessary.

12

significance of a small number of terminations, as Paolercio has presented no evidence regarding how many workers there were in the entire protected group. Putting aside that the court finds extremely dubious the suggestion that the termination of less than half a dozen employees at a large employer such as Allstate would have a statistically significant effect that implicates the entire group of Allstate employees in the protected group, the court cannot make any determination regarding disparate impact in the absence of statistical evidence. Furthermore, Paolercio has failed to "isolate[e] and identify[] the *specific* employment practices that are allegedly responsible for any observed statistical disparities." See Smith v. City of Jackson, Miss., 544 U.S. 228, 241 (2005). In the absence of such a claim and in the absence of statistical evidence, no rational jury could find disparate impact based on age. Accordingly, defendants are entitled to summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

SO ORDERED.

                                                                                                       s/Nicholas G. Garaufis

Dated: Brooklyn, New York                             NICHOLAS G. GARAUFIS
September 30, 2011                                             United States District Judge